381 So.2d 477 (1980)
STATE of Louisiana
v.
Louis J. NELSON and Edwine Guillot.
No. 65584.
Supreme Court of Louisiana.
March 3, 1980.
*478 Glass & Reed, Robert Glass, New Orleans, for defendant-appellant, Louis J. Nelson.
Bernard Horton for Edwine Guillot, defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.[*]
This case presents questions concerning the constitutional requirement for obtaining a search warrant.
*479 Two New Orleans police officers applied to a criminal district judge on December 3, 1976 for warrants to search for narcotics in four dwellings within the city. In support of their application, the officers submitted an affidavit setting forth their conclusions that the four residences were being used to store and sell heroin. Their affidavit contained, as a basis for their conclusions, the conclusions of reliable confidential informants and underlying circumstances which purported to corroborate the informants' information.
The informants' conclusions were, in essence, that:
Louis J. Nelson, who resides at 2323 North Villere Street, and drives a red Cadillac with Texas license plates, has been supplying heroin in large quantities to Bernell Webster and her paramour, William Carter. Nelson formerly lived with Bernell Webster at 3311 Louisiana Avenue Parkway, but William Carter moved in with her while Nelson was Texas. Bernell Webster and William Carter are selling drugs from 3311 Louisiana Avenue Parkway and another unknown address. They are also supplying large amounts of heroin for resale to Julius Handy and Sidney Ganier, who reside at 2256 North Villere Street.
An examination of the officers' affidavit, focusing on the underlying circumstances from which the officers concluded that the informants' information was reliable as it pertained to drug distribution activities involving Louis J. Nelson and his residence at 2323 North Villere, reveals, in substance, the following:
(1) On August 7, 1976 a reliable confidential informant told an officer that he recently purchased heroin from William Carter at 2135 Lafitte Street.
(2) Police surveillance on several occasions detected heavy pedestrian traffic at 2135 Lafitte Street which ceased during the last week of August.
(3) Police records showed that William Carter had been arrested three times and convicted once for a felony narcotics offense.
(4) On September 8, 1976 a reliable confidential informant told an officer that he had purchased heroin from Bernell Webster, William Carter, Louis Nelson, Julius Handy and Sidney Ganier, at their designated locations on numerous occasions. (The affidavit is vague on this point. Our interpretation, for purposes of this opinion only, is the one most favorable to the prosecution. Our reading may exceed the bounds of common sense, however, because it conflicts with the remainder of the affidavit which throughout characterizes Nelson as the wholesale supplier, rather than a retail dealer. See appendix).
(5) On September 13, 1976 the officers saw Julius Handy park a Buick in front of 3311 Louisiana Avenue Parkway and go in at 6:00 p. m. He came out at 6:30 p. m. and left. On October 7, 1976 Handy was arrested for distribution of heroin at an undisclosed location.
(6) On November 7, 1976 the officers saw Louis Nelson's red Cadillac convertible parked at 2323 North Villere Street. At 11:30 p. m. a Negro male came out of 2323 North Villere, entered a 1969 Chevrolet, drove to Sidney Ganier's residence at 2256 North Villere, and went inside. Later the same man came out, drove to 3311 Louisiana Avenue Parkway and entered.
(7) On November 19, 1976 at 8:30 p. m. the officers saw William Carter and a Negro female come out of 3311 Louisiana Avenue Parkway, drive to 1441 Spain Street, and go in. At 9:00 p. m. the pair left and drove to 2256 North Villere, where they entered and remained.
(8) On November 26, 1976 a confidential reliable informant told the officers that William Carter was residing with Bernell Webster at 3311 Louisiana Avenue Parkway and 1441 Spain Street; that Carter was using Sidney Ganier as a retail dealer; and that the informant had purchased heroin from Carter and Ganier at both of their residences.
(9) On November 30, 1976 at about 7:30 p. m. the officers saw Sidney Ganier come out of 3311 Louisiana Avenue Parkway and *480 enter a green 1966 Chevrolet. He was followed and stopped by the officers at Claiborne Avenue and I-10. Upon being questioned, Ganier denied having been at 3311 Louisiana Avenue Parkway. The officers saw several pieces of tin foil, the size used to market heroin, scattered about Ganier's car. At 9:00 p. m. the officers saw Ganier on the porch at 2256 North Villere talking with an unknown Negro female.
(10) On December 2, 1976 at 11:15 p. m., the officers saw William Carter and an unidentified black couple travel from 3311 Louisiana Avenue Parkway to 1441 Spain Street in a 1967 Buick owned by Bernell Webster's son. The three persons entered 1441 Spain Street with the woman carrying a paper bag. At 11:30 p. m. the woman left the premises, placed a smaller paper bag in her coat pocket, and walked around the corner to 2323 North Villere Street.
(11) On the evening of December 2, 1976 a federal drug enforcement officer told one of the New Orleans officers that a reliable source said William Carter had just received a large amount of heroin which would be stored at 2556 North Villere, 1441 Spain and an undisclosed location.
The criminal district judge on December 3, 1976 issued warrants to search 3311 Louisiana Avenue Parkway, 1441 Spain Street, 2256 North Villere Street, and 2323 North Villere Street.
In executing the warrants the officers entered the premises at 2323 North Villere Street and seized approximately five ounces of heroin. Defendants, Louis J. Nelson and Edwine Guillot, were arrested inside the house during the search. Indictments were returned against defendants charging them with possession of heroin with intent to distribute. La.R.S. 40:966.
Defendants moved to suppress the substances seized. The district court denied their motion. Defendant Nelson pleaded guilty as charged, reserving his right to appeal from the trial court's refusal to suppress the evidence. Defendant Guillot went to trial and was found guilty as charged by a jury. Each defendant was sentenced to life imprisonment at hard labor without probation, parole or suspension of sentence. Both defendants appeal and argue primarily that the constitutional requirements were not complied with when the police obtained the search warrant for 2323 North Villere Street.
A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant. La.Const. of 1974, Art. 1, § 5; La.C.Cr.P. art. 162.
Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, was "credible" and his information "reliable." Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Factors which support the credibility of an unidentified informant include prior accurate reports or any specific independent corroboration of the accuracy of the instant report. Factors which support the reliability of the informant's information include (1) direct personal observation by the informant, or (2) if the information came indirectly to the informant, the reasons in sufficient detail for the magistrate to evaluate and credit the reliability both of the indirect source and of the indirectly-obtained information. State v. Paciera, 290 So.2d 681 (La.1974).
Applying these principles to the present case, we conclude that the search warrant affidavit did not establish probable cause to search Louis J. Nelson's dwelling at 2323 North Villere on December 3, 1976. Since the affidavit does not reflect a direct observation of narcotics that would indicate heroin was located in Nelson's house on this *481 date,[1] the prosecution's showing of probable cause depends upon whether the affidavit establishes reasonable cause to believe that Nelson regularly stored and supplied heroin for the Webster-Carter drug operation up through December 2, 1976. The affidavit does not provide a basis for such a reasonable belief, because it does not inform the magistrate of any underlying circumstances from which the informant concluded that Nelson was the supplier for the Webster-Carter operation and it does not furnish independent corroboration of the accuracy of his report.
It is self-evident that the affidavit does not inform the magistrate of any underlying circumstances from which the informant concluded that Nelson was Webster's former paramour, that he had become the drug supplier for Webster and Carter, or that Nelson was even acquainted with Webster and Carter. However, the affidavit reports observations by the police which provide cause to suspect a link between these individuals. Based on their surveillance, it can be said that: on November 7, 1976 after 11:30 p. m., an unidentified black man visited 2323 North Villere, 2256 North Villere and 3311 Louisiana Avenue Parkway; and on December 2, 1976 at 11:30 p. m. an unidentified black woman, who earlier left 3311 Louisiana Avenue Parkway with William Carter in Bernell Webster's son's car carried something in paper sacks to 1441 Spain Street and 2323 North Villere Street. These reports indicate that the residents of these dwellings had mutual acquaintances and perhaps that they were friends and associates, but ultimately the police surveillance and other information fail to confirm the informants' report that Nelson was the storer and supplier of drugs for Webster and Carter.
The informant's tip received by the federal officer cannot be used to corroborate the unverified hearsay in the affidavit, because the tip itself fails to meet any of the Aguilar-Paciera tests. The underlying circumstances from which the federal informant concluded that Carter had just received a large supply of heroin, to be stored at 2556 North Villere, 1441 Spain and an "undisclosed location," are not set forth in the affidavit. Nor do we know the underlying circumstances from which the federal officer concluded that his informant was credible. Furthermore, there is insufficient specific independent corroboration of the accuracy of this informant's report in the affidavit. The mere fact that an unidentified woman seen earlier with Carter visited Nelson's house with a paper bag in her coat pocket on the night of the tip does not confirm its veracity as to the heroin shipment. If a policeman does not have probable cause to arrest a person because he was seen by the police with a paper sack leaving a place designated as a drug outlet by a reliable confidential informant who had seen contraband there, see State v. Kinnemann, 337 So.2d 441 (La.1978), there certainly cannot be probable cause to search Nelson's house because a person who visited it carrying a paper sack was seen earlier in the company of Carter, from whom confidential reliable informants had bought an unknown quantity of drugs on unspecified occasions. As in Kinnemann "[t]he actions of this person, a stranger to the police, were more consistent with innocence than with guilt." 337 So.2d 446. Unless the after-the-issuance discovery of the contraband clouds our judgment, we must find that the reasonable probabilities, when the unidentified woman visited 2323 North Villere, weighed more heavily on the side of innocence than of guilt.
The motion to suppress should have been sustained.
For these reasons, the convictions and sentences are reversed and the case is remanded *482 for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
WATSON, J., dissents, being of the opinion that the totality of the information in the affidavit constituted probable cause.

APPENDIX
Paragraph 4 of the affidavit states in its entirety:
"On Sept. 8, 1976 Narcotics Officers James Lewis and Stephen Koch met with a reliable Confidential Informant who has supplied the Officers with information in the past which has led to arrests and conviction of Narcotic Violators. The informant stated that a female, Bernall Webster and her paramour, William Carter AKA Blood, were presently engaged in the distribution of Heroin in the New Orleans area, utilizing Bernel Webster's residence located at 3311 Louisiana Ave. Pky. as a base of their operation in addition to having a residence an unknown location.
The Confidential informant stated that Bernell Webster received her supply of Heroin from a Negro Male known as Louis Nelson, who drove a red Cadillac Convertable bearing Texas Plates, and who resided at 2323 N. Villere.
The Informant stated that Louis formerly resided with Bernell Webster at 3311 Louisiana Ave. Pky. but had returned to Texas for a short period of time, and that Blood, William Carter, had recently moved in with Bernell Webster at 3311 Louisiana Ave. Pky.
The informant further stated that a Subject named Julius Handy, B Of I Number 89-092, was presently dealing large amounts of Heroin for Bernell Webster, was Sidney Ganier, NM, B of I Number 124-967, who resides at 2256 N. Villere. It should be noted that Sidney Ganier received two (2) years probation for possession of Heroin. The probation was terminated on 2-26-74.
The informant further stated that he has purchased Heroin from all of the persons at their designated locations on numerous occassions."
NOTES
[*] The Honorable PAUL B. LANDRY, Jr., participated in this decision as an Associate Justice Ad Hoc.
[1] Even if we assume that a common sense construction of the affidavit would indicate an unknown number of sales of an unknown quantity of heroin by Nelson to an informant at 2323 North Villere occurring more than 86 days before issuance of the warrant, this would not establish probable cause to believe that heroin was located in the premises on December 2, 1976. See State v. Bonaventure, 374 So.2d 1238 (La.1979); State v. Welsh, 371 So.2d 1314 (La.1979); State v. Thompson, 354 So.2d 513 (La.1978).