391 So.2d 434 (1980)
STATE of Louisiana
v.
Kenneth OGDEN and Benjamin Geraghty.
No. 67608.
Supreme Court of Louisiana.
November 10, 1980.
*435 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Leon A. Cannizzaro, Asst. Dist. Atty., for plaintiff-relator.
Paul A. Tabary, III, Sapir & Belknap, New Orleans, for defendant-respondent Kenneth Ogden.
Edward Baldwin, New Orleans, for defendant-respondent Benjamin Geraghty.
*436 LEMMON, Justice.
Charged with possession of controlled dangerous substances and possession with intent to distribute, defendants successfully moved to suppress evidence seized pursuant to execution of a search warrant. Because the seized items were the principal evidence to be offered against defendants, the prosecution sought review, and this court granted certiorari. 385 So.2d 288.
The search, conducted on November 23, 1979 at Benjamin Geraghty's apartment at 710 Weiblen Place in New Orleans pursuant to a warrant issued the same day, yielded three "lids" of marijuana, a small amount of cocaine, and various "drug paraphernalia".
On its face the affidavit (annexed as an appendix) establishes probable cause to search the apartment.[1] In the affidavit Officers McNeil and Elder of the New Orleans Police Department, Drug Abuse Unit, stated that they were contacted by a confidential informant on November 21, 1979; that the informant was well known to McNeil and had previously supplied McNeil with information which proved instrumental in securing the arrest and conviction of other drug violators in the New Orleans area; and that the informant admitted to Elder he had purchased cocaine from Kenneth Ogden three days earlier in an apartment at 710 Weiblen and had previously purchased cocaine from Ogden in a parking lot at the Lake Forest Plaza Shopping Center, near Ogden's place of employment with Sears, where Ogden secured the cocaine from a dark grey 1971 Mercedes-Benz bearing Louisiana license No. 146B364.
Thus, the affidavit describes drug transactions in significant detail revealed as first hand observation by an informant shown to be reliable on the basis of past accurate information. And the informant's credibility was strengthened by his declaration against penal interest.[2]
The affidavit further recited that Officer Elder, who worked at Sears as a security officer and knew that Ogden drove a 1971 Mercedes, had been previously apprised by a "concerned" person that Ogden was "trafficking" in cocaine from that car in the same manner described by the confidential informant-that is, Ogden would meet the purchaser during working hours and proceed to his Mercedes, where the transaction would take place. Although the "concerned" person's identity was not revealed, and although the information did not purport to be based on firsthand observation, the additional report nevertheless corroborated that of the informant and lent some support to the conclusion that Ogden was involved in a continuing illegal enterprise.
A further statement in the affidavit established that Ogden's criminal record included two prior convictions for drug violations. This information further supported the officers' belief that Ogden was involved in illegal drug transactions. United States v. Harris, above.
We conclude that the affidavit in this case plainly recited detailed facts which would establish to the satisfaction of a neutral and detached magistrate probable cause to search the named premises. La. Const. art. 1, § 5 (1974); C.Cr.P. art. 162; State v. Nelson, 381 So.2d 477 (La.1980); State v. Paciera, 290 So.2d 681 (La.1974). A showing of probable cause requires much less evidence than proof beyond a reasonable doubt. As the term "probable cause" implies, the magistrate, and the officers securing his approval for the search, are *437 dealing in probabilities. "These are not technical; they are factual and practical considerations of everyday life upon which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949). Furthermore, a magistrate's determination of probable cause should be accorded great deference by a reviewing court. State v. Nix, 327 So.2d 301 (La.1975). The reviewing court must avoid the temptation to substitute its judgment for that of the magistrate and should merely determine whether there was a substantial basis for the magistrate's determination. United States v. Middleton, 599 F.2d 1349 (5th Cir. 1979); State v. Sierra, 338 So.2d 609 (La.1976). In this case the revelations of the credible informant (based on firsthand observation) and of the "concerned" person, as well as the fact of Ogden's prior drug convictions, provided a substantial basis for the magistrate's determination of probable cause.[3]
As to the issue of whether the passage of time rendered the facts supporting probable cause so attenuated as to defeat the inference that the objects sought may still be found on the premises, that determination depends on the facts and circumstances of each case. State v. Gilbert, 354 So.2d 508 (La.1978); State v. Thompson, 354 So.2d 513 (La.1978). Whether an object from its nature can be expected to be retained on the premises and whether the evidence indicates that the course of conduct is continuing are important factors to consider. See State v. Gilbert, above; State v. Loehr, 355 So.2d 925 (La.1978); State v. Armstead, 385 So.2d 241 (La.1980).
The informant's statement, although not indicating the exact quantity of cocaine Ogden possessed at a given time, did provide a reasonable basis for the inference that Ogden generally had an amount of cocaine sufficient for commercial distribution and not merely for personal consumption. Compare State v. Lewis, 385 So.2d 226 (La.1980). The statement indicating a continuous activity in drug transactions, in which Ogden readily supplied those who called upon him at his residence or place of work, also supports the inference that a continuing supply of cocaine would be available. While the warrant was issued two days after the informant's tip (which revealed that a sale had occurred at the apartment three days earlier), the last purchase by the informant was not so far removed in time as to defeat the inference that a supply of the illegal substances would still be on hand. Moreover, at the time of the last purchase Odgen invited the informant to return for future purchases, and nothing indicated that Ogden was going out of business. Quite the contrary inference could be drawn from his continued series of drug sales.
On the basis of these facts and circumstances the magistrate was reasonable in concluding that probable cause existed to believe controlled substances would be found on the premises five days after the last buy reported by the informant. See State v. Armstead, above. The magistrate's finding of probable cause was thus supportable without consideration of Paragraph 3 of the affidavit, relating to police surveillance following the informant's tip.[4] Nevertheless, the conclusion that probable cause was established by the facts in the affidavit outside of Paragraph 3 does not dispose of defendants' alternative contention that the warrant should be quashed because of inaccurate information about the surveillance stated in Paragraph 3.
During the hearing on the motion to suppress, defendants' examination of Officers McNeil and Elder focused on their reported *438 observations during the brief surveillance of 710 Weiblen. The surveillance began at about 4:00 p. m. on November 21, 1979. Both officers testified that they observed two male visitors arrive at the apartment at different times, one on foot and the other by automobile, and leave after a brief visit; that Ogden's Mercedes was parked in front of the apartment during the surveillance; and that Ogden placed some clothes in the car and drove away at about 4:40 p. m.
To challenge the accuracy of the officers' observations the defense called Ogden's estranged wife. Diane Ogden testified that on November 21, 1979, at 2:00 p. m., her husband picked her up at her place of employment in his 1971 Mercedes; that she and her husband went to 710 Weiblen between 2:30 p. m. and 3:00 p. m. where he picked up some clothes; and that they immediately left and went to her apartment at 935 Conti Street, where they were at 4:00 p. m. She did not explain how she recalled so clearly the times and events that occurred six months earlier, and the record does not shed light on the possibility that Ogden may have returned to 710 Weiblen later in the afternoon of the surveillance for some other reason. Nevertheless, her testimony calls into question the accuracy of the officers' statement relating to the surveillance.
The trial judge, in oral reasons for granting the motion to suppress, stated that the amount of surveillance was inadequate and that the activity described by the policemen was not sufficient cause for going forward with the search. He also observed that the testimony of Ogden's wife was "believable because she and her husband were separated, I believe" and that "I believe she told the truth to the best of her knowledge".[5]
If the trial judge maintained the motion to suppress because he found the surveillance was inadequate (necessarily implying that the affidavit on its face did not support a finding of probable cause), he was clearly wrong. Furthermore, the trial judge erred if he suppressed the evidence merely because the officers inaccurately described the events of their surveillance or were confused as to the time sequence, because a good faith error by affiants through inclusion of inaccurate information in their affidavits requires only the deletion of that information and not the quashing of the entire warrant. State v. Rey, 351 So.2d 489 (La.1977); State v. Paster, 373 So.2d 170 (La.1979). Only if the trial judge found that the officers intentionally misrepresented facts concerning their surveillance would he have been justified in ordering the warrant quashed and the evidence suppressed in this case.[6]State v. Rey, above; State v. Paster, above; State v. Lamartiniere, 362 So.2d 526 (La.1978).
The trial judge in this case, however, did not make an explicit finding that the officers intentionally misrepresented facts in executing the affidavits. His offhand reference to the wife's credibility cannot reasonably be interpreted as an explicit finding of intentional misrepresentation by the officers. The harsh result of quashing a search warrant, when the affidavit supports a finding of probable cause, should obtain only when the trial judge expressly finds an intentional misrepresentation to *439 the issuing magistrate.[7] The trial judge's oral reasons, viewed in the light of the evidence at the hearing on the motion to suppress, at best establish that the information obtained by surveillance was of questionable accuracy and should have been deleted from the affidavit. Since the affidavit, with this information deleted, clearly established probable cause, the motion to suppress was improvidently granted.
Accordingly, the judgment granting the motion to suppress is reversed, and the motion is denied. The matter is remanded for further proceedings.
DIXON, C. J., concurs.
DENNIS, J., concurs with reasons.

APPENDIX
1.) On Wednesday, November 21, 1979 Narcotics and Drug Abuse Officers Greg Elder and Robert McNeil were telephonically contacted in their office by a reliable and confidential informant whose information in the past has proven instrumental in leading to the arrest and subsequent conviction of those persons engaged in the illicit drug trafficking maintained within the city of New Orleans. At this time the informant apprised the Officers that within a period of three (3) days prior to the instant investigation he had the occasion to go to the address of 710 Weiblen Place, the residence of Kenneth Ogden WM/32, for the express purpose of purchasing a retail quantity of cocaine for self-consumption. The informant related to the Officers that he did indeed procure the cocaine from Ogden from within the premises and as in previous instances was invited back to purchase additional quantities of the contraband. The informant also advised the Officers that within the same time interval he had the opportunity to purchase a quantity of cocaine from Ogden from within the parking area of the Lake Forrest Plaza shopping center. The informant stated that Ogden was employed by the Sears Roebuck Corporation as an automotive mechanic and worked at the Plaza branch located at 5700 Read Blvd. The informant stated that he met with Ogden at his place of employment to initiate the transaction. The informant stated that Ogden then directed him to his vehicle, 1971 Mercedes Benz (dark grey) bearing Louisiana license plate 146B364, to complete the transaction. The informant stated that Ogden removed the cocaine from within the passenger area of the vehicle thereby completing the sale. The informant advised the Officers that the location of the purchases of cocaine from Ogden were dictated by Ogden's working schedule and the time of the purchase. The informant advised the Officers that in most instances if Ogden was working the purchase was done from his vehicle at the Plaza. If Ogden was not at work, the purchase took place at his residence, 710 Weiblen Place.
2.) At the conclusion of the conversation Officer Elder apprised Officer McNeil of the fact that he was employed by Sears in the capacity of security personnel at the Plaza shopping center. Officer Elder is familiar with Ogden as an employee at Sears by means of the Officer's job description. The Officer is also aware of the fact that Ogden owned a dark grey 1971 Mercedes Benz. During the month of November, 1979 Officer Elder had the occasion to speak with a concerned yet anonymous source of information concerning the drug trafficking activities of Kenneth Ogden during the spectrum of his employment at Sears. This source of informant indicated that Ogden was dealing quantities of cocaine from his vehicle, 1971 Mercedes Benz, during the working hours of the day. The cooperating individual stated that Ogden would meet with subjects during the day and then follow them to the Mercedes to complete the deal.
3.) Acting upon the information depicted above, Officers McNeil and Elder initiated a surveillance of 710 Weiblen Place on the afternoon of Wednesday, November 21, *440 1979. At about 4:00 PM, as the Officers positioned themselves in their vantage point they observed and recognized the dark gray 1971 Mercedes Benz bearing Louisiana license plate 146B364 parked next to the address. A check through NCIC indicated the vehicle to be registered to Kenneth Ogden. At about 4:10 PM the Officers observed a WM/25 wearing dark clothing approach the address from a river direction on Canal Blvd. The subject walked to the front door and knocked on the door. A few minutes later the subject was allowed entry into the premises. At about 4:15 PM the WM exited the address. The subject began to walk very slowly towards Canal Blvd. At the intersection the subject momentarily stopped and began to very cautiously look about the area as if to detect anyone noting his actions. The subject then walked quickly away from the area in a river direction. At about 4:20 PM the Officers observed a late model Ford Mustang stop in front of the address. A WM/25 exited the vehicle and walked directly to the front door and knocked. A few moments later the subject was allowed entry into the address. At about 4:25 PM the subject exited the address and walked quickly to his vehicle. The subject walked to the front driver's side wheel well and stoop over placing his hands under the car as if to secret the contents of his hands beneath the vehicle. The subject then entered the vehicle and quickly left the area. At about 4:40 PM the Officers observed and recognized Kenneth Ogden WM/32 exit the front door of 710 Weiblen Place and prepare to enter the 1971 Mercedes. The subject began to place some clothing into the vehicle. The subject then left the vehicle and spoke with someone on the second story balcony of the address. At the conclusion of this conversation the subject walked to the intersection of Weiblen and Canal and began to nervously look up and down the street as if to detect anyone noting his actions. The subject then entered the vehicle and left the area. At this point in the investigation the Officers decided to terminate the watch of the address in order to protect the integrity of the investigation due to the heavy pedestrian traffic in the area.
4.) It should be noted that Kenneth Ogden is known by members of the Narcotics Division as a documented cocaine and marijuana trafficker. A more detailed check into the criminal background of Ogden revealed the following information:
KENNETH C. OGDEN WM/5-21-47
FELONY ARRESTS: FIVE WITH TWO(2) CONVICTIONS
Subject is presently on probation for drug violations within schedule I and schedule II of the Louisiana Controlled Dangerous Substance Act.
5.) Due to the information received and the surveillance conducted, it is the affiants belief that contraband controlled dangerous substances, more particularly cocaine, are being secreted within and distributed out of the address of 710 Weiblen as well as a 1971 Mercedes Benz (dark Gray) bearing Louisiana license plate 146B364, owned and operated by Kenneth Ogden WM/32, and respectfully that a search warrant be issued for both the address and vehicle.
NOTES
[1] A warrant was also issued for the search of a 1971 Mercedes-Benz vehicle owned by Kenneth Ogden. Although the contraband was apparently seized in the apartment, the warrant contained allegations sufficient to support a finding of probable cause to search the vehicle as well.

The evidence shows that the apartment was Geraghty's. Ogden and his wife had been separated since August, 1979, and at the time of the search Ogden had been staying in Geraghty's apartment and had clothes there, although he and his wife had resumed living together to some extent at her apartment in a trial reconciliation.
[2] As the Court said in United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971):

"Admission of crime, like admissions against proprietary interests, carry their own indicia of credibility-sufficient at least to support a finding of probable cause to search."
See also State v. Gilbert, 354 So.2d 508 (La. 1978).
[3] The factors for consideration are stated in State v. Paciera, above, as follows:

"Factors which support the credibility of an unidentified informant include prior accurate reports or any specific independent corroboration of the accuracy of the instant report. Factors which support the reliability of the informant's information include (1) direct personal observation by the informant, or (2) if the information came indirectly to the informant, the reasons in sufficient detail for the magistrate to evaluate and credit the reliability both of the indirect source and of the indirectly-obtained information."
[4] The information contained in Paragraph 3 was only of marginal utility, even if accepted as accurately observed. See the affidavit included in the appendix.
[5] At the time of the hearing on the motion to suppress in May, 1980, Mrs. Ogden was legally separated from her husband, but was still living with him in an attempt at reconciliation.
[6] As this court said in Rey, an intentional misrepresentation to the magistrate by a police officer constitutes a "fraud upon the courts and represent(s) impermissible overreaching by the government". 351 So.2d at 492. This court in Rey held that the proper sanction in such a case is to quash the warrant and not merely to excise the intentionally misrepresented facts and examine the remainder of the affidavit to determine whether probable cause is still shown. Compare Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

Under the Supreme Court's approach in Franks, even deliberate falsehoods by a police affiant or statements by a police affiant evincing a reckless disregard for truth need only be excised from the affidavit. The remaining facts are then examined to determine whether they warrant a finding of probable cause absent the misrepresentations. The Rey decision provided a more realistic approach to reprehensible police conduct, which the exclusionary rule is designed to prevent.
[7] The burden of proof falls upon the defendant to prove by a preponderance of the evidence that the affiants intentionally included falsehoods in their affidavit. Franks v. Delaware, supra; State v. Bouffanie, 364 So.2d 971 (La. 1978); State v. Paster, above.