640 So.2d 588 (1994)
STATE of Louisiana, Plaintiff-Appellee,
v.
Johnny A. NIEL, Jr., Defendant-Appellant.
No. CR93-1510.
Court of Appeal of Louisiana, Third Circuit.
May 4, 1994.
*590 David Wayne Burton, DeRidder, for State of La.
David L. Wallace, DeRidder, for Johnny A. Niel, Jr.
Before YELVERTON and THIBODEAUX, JJ., and CULPEPPER[*], J. Pro Tem.
WILLIAM A. CULPEPPER, Judge.
Agents of the Beauregard Parish Sheriff's Office and of the Federal Drug Enforcement Administration (D.E.A.) conducted an investigation of the defendant, Johnny A. Niel, Jr. This investigation culminated in the issuance of a search warrant by Ward Three DeRidder City Court Judge, James K. Nichols, on December 11, 1991 and the execution of same the following day. Upon searching defendant's residence at 116 Wilson Street, DeRidder, Louisiana, law enforcement officers seized a large number of growing marijuana plants (approximately 185 plants), and a large number of other items related to the cultivation and use of marijuana. Defendant was arrested at the time of the search. Later that day, defendant gave a voluntary statement describing his marijuana cultivation activity.
Defendant was charged by original Bill of Information filed on February 21, 1992, with Possession of Marijuana With the Intent to Distribute and Cultivation of Marijuana. After pleading not guilty at his arraignment, defendant filed a Motion to Suppress, alleging that the affidavit/application for search warrant was filled with innuendo and stale and erroneous information so that it could not have contributed anything to the probable cause that the court was to consider before issuing the warrant. Defendant also alleged that some of the efforts to obtain records, from which information was used in the affidavit, violated his right to privacy.
A hearing was held on defendant's Motion to Suppress on October 30, 1992, which the trial court denied in all respects. Thereafter, defendant pled guilty on May 7, 1993, to the amended charge of Conspiracy to Cultivate Marijuana, reserving his right to appeal the ruling on the Motion to Suppress. On August 30, 1993, defendant was sentenced to serve sixty (60) months with the Louisiana Department of Corrections.
*591 Defendant appeals asserting two assignments of error.

ASSIGNMENT OF ERROR NO. 1
By this assignment of error, defendant contends the trial court erred by failing to grant defendant's motion to suppress. Defendant asserts the affidavit which formed the basis for the search warrant contained stale, erroneous, and misleading information so that it should not have formed the basis for probable cause before the issuing magistrate. Defendant also asserts that his right to privacy was violated.
LSA-C.Cr.P. art. 162 provides:
"A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
"A search warrant shall particularly describe the person or place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search or seizure."
In State v. Byrd, 568 So.2d 554, 559 (La.1990), our Louisiana Supreme Court stated:
"We have held that `probable cause exists when the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched.' State v. Johnson, 408 So.2d 1280, 1283 (La.1982). An issuing magistrate must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a `fair probability' that evidence of a crime will be found in a particular place. The task of the reviewing court is simply to insure that the magistrate had a `substantial basis' for concluding that probable cause existed. Illinois v. Gates, 462 U.S. 213, 239-41, 103 S.Ct. 2317, 2322-23, 76 L.Ed.2d 527 (1983); State v. Lingle, 436 So.2d 456, 460 (La.1983)."
The resolution of doubtful or marginal cases should be determined by according preference to warrants, so as to encourage police officers to submit evidence to a judicial officer before acting. State v. Huffman, 419 So.2d 458 (La.1982). The making of material and intentional misrepresentations to a magistrate involves a fraud upon the courts and will result in the invalidation of the warrant and suppression of the items seized. Byrd, supra. If the misrepresentations or omissions are inadvertent or negligent, the warrant will be retested for probable cause after supplying that which had been omitted or striking that which had been misrepresented. Byrd, supra. Defendant bears the burden of going forward on the allegation of misrepresentation. State v. Smith, 397 So.2d 1326 (La.1981).
We set forth the affidavit for the search warrant as follows:

"Affidavit for Search Warrant
"Affiant has learned through investigative efforts that, between November 1988 and October 1989, at least 17 packages were delivered by United Parcel Service (UPS) to a residence located at 116 Wilson St., DeRidder, Louisiana, from three out-of-state companies, which the D.E.A. knows to specialize in equipment and seeds necessary for the cultivation of marijuana. Three of the packages were not addressed to any particular person at the residence. The remainder of the packages were addressed to either Jay HURT, J. HURT, Jan HURT, Jay HUNT, J. HUNT, Jay HART, Jay HUIT, or Hoyt NIEL.
"A check with the City of DeRidder Water Department by Beauregard Parish Sheriff's Office Chief of Detectives Robert McCullough revealed that water services for 116 Wilson St. are billed to John A. NIEL, Jr. John NIEL has a lengthy criminal history, which includes the following drug-related charges:
*592
 2/17/77 Los Angeles, CA Police Department, Possession of Controlled
 Substance
 8/28/77 Reno, NV Police Department, Possession of Controlled
 Substance
 6/6/85 Lake Charles, LA S.O., Possession of a Controlled Dangerous
 Substance and Possession of Marijuana
 9/10/85 USM Shreveport, LA, Conspiracy to Possess and Distribute
 Cocaine
"On November 16, 1991, Beauregard Parish S.O. Chief Robert McCullough observed a 1985 Chevrolet pickup truck bearing Georgia license RB2251 parked at 116 Wilson St. The truck is registered to Hoyt C. NIEL, the son of John A. NIEL Jr. Hoyt NIEL lists 116 Wilson St. as his residence on his Louisiana drivers license, which is suspended. Hoyt NIEL has a criminal history which includes driving under the influence of alcohol/drugs, theft, and introduction of contraband into the parish jail.
"Affiant served an administrative subpoena on South Central Bell Telephone Company, and obtained long-distance toll records for telephone No. (318)463-3443, which is subscribed to by John NIEL, 116 Wilson St., DeRidder, Louisiana. According to the records obtained, several calls were made from 116 Wilson St. to various gardening supply companies. Two of the calls were made in November 1991. (Reference Chart # 1).

 "Chart # 1
 "Telephone Calls Made From 116 Willson St.
 Number Called Gardening Supply Company Date(s)
 Called Called
 (415) 382-1360 Dyna-Grow * 1/29/91
 1065 Broadway
 SanPablo, CA
 (415) 233-0254 Dyna-Grow *
 1065 Broadway 8/29/91
 SanPablo, CA 11/7/91
 (412) 964-8102 Wider Co. 11/29/90
 Box 406 12/19/90
 Pulaski, PA 12/26/90
 12/27/90
 1/2/91
 1/7/91
 1/29/91
 2/14/91
 3/5/91
 4/4/91
 5/31/91
 8/28/91
 (414) 682-8113 American Home
 & Gardening, 2950 1/9/91
 Menasha Ave.,
 Meritowoc, Wisconsin
 (713) 350-8873 Texas Grower's Supply 9/26/91
 108 Magic Oaks 10/3/91
 Spring, Texas 11/2/91
*Dyna-Grow is known by D.E.A. to cater to customers
requiring equipment/seeds for marijuana cultivation.

*593 "The long distance telephone toll records obtained for telephone # (318)463-3443 (located at 116 Wilson St.) also revealed a call placed on July 3, 1991, to telephone # (900)988-4637. Your Affiant called that number, which was answered by a recording, which stated: "Welcome to the new, improved High Times Hotline." The recording offers listeners the following menu of information:
"Press 1 for growtips
Press 2 for the contest line in the hemp 100
Press 3 for trans high market quotations
Press 4 for the hemp tour
Press 5 for the gripe line
Press 6 for how to beat a urine test
Press 7 for the talking centerfold
Press 8 for the travel line
Press 9 for the High Witness news flashes."
"The above recording is believed to be associated with the High Times Magazine, which publishes growing tips and other information pertinent to the cultivation, distribution, and usage of marijuana.
"Based on Affiant's experience, large amounts of electricity are used to operate indoor marijuana growing equipment. Affiant obtained utility billing records for 116 Wilson St., from CLECO in DeRidder, Louisiana, through an administrative subpoena. Compared with three other residences on Wilson St. picked at random, 116 Wilson St. has utilized an abnormally high amount of electricity during the past several months (Reference Chart # 2).

 "Chart # 2
 "Comparison of Electricity Used
 116 115 108 105
 Wilson St. Wilson St. Wilson St. Wilson St.
Total CLECO bills for $1,355.80 $186.59 $266.88 $405.97
time period April-October
1991
Most recent CLECO $ 153.62 $ 15.29 $ 28.85 $ 35.95
bill (12/3/89)

"Affiant knows, based on her previous training and experience, that indoor marijuana cultivation requires the use of high intensity, high voltage grow lights, which radiate a high level of heat. Within the past 24 hours Affiant was present when D.E.A. Special Agent C. Robert Breard surveyed the residence and outbuildings located at 116 Wilson Street, with a piece of equipment known as a Thermal Imager. S/A Breard is certified in the use of this device, which is capable of detecting high levels of heat emanating from a building. A Thermal Imager is a passive, non-intrusive device, which is commonly utilized by electric companies to detect electrical problems in buildings. The Thermal Imaging Device is available to the general public throughout the United States. This device has been utilized previously by the Drug Enforcement Administration and state agencies in the detection of heat generated by indoor marijuana cultivation. Although not conclusive, the device has indicated a more intense heat being emitted from the above listed residence, when compared to several other residences in the immediate area at approximately the same time of day."
Lisa Gigante, a special agent for the Drug Enforcement Administration (DEA), was the affiant for the affidavit/application for search warrant. Defendant asserts that Gigante deliberately misrepresented to the signing magistrate the nature and contents of the UPS packages in an effort to mislead the magistrate into signing the warrant. *594 Specifically, defendant asserts that at the hearing on the motion to suppress Gigante admitted that she had no personal knowledge of what was contained in these packages or of the nature of the companies involved. Defendant asserts that Gigante admitted that none of the companies involved had ever been prosecuted for any criminal violations.
At the hearing, Gigante testified that information regarding the UPS packages and the companies involved was passed to her through DEA headquarters. Although the term "investigative efforts" is vague, because Gigante is an agent for the DEA, the magistrate could have concluded that the term referred to DEA activity. We find that the defendant has failed to prove that these statements concerning the packages or the companies were false. We find no merit in defendant's arguments in this regard. Defendant also asserts that the information regarding the UPS packages was stale since the last package was received more than two years before the warrant was issued and some of the information was at least three years old.
Staleness is an issue only where the passage of time makes it doubtful that the object sought in the warrant will still be found on the premises. See State v. Tate, 407 So.2d 1133 (La.1981) and State v. Ogden, 391 So.2d 434 (La.1980). A determination in this regard depends on the facts and circumstances of each case. Ogden, supra. Whether an object from its nature can be expected to be retained on the premises and whether the evidence indicates that the course of conduct is continuing are important factors to consider. Ogden, supra.
In Tate, supra, the Supreme Court found the passage of two and one-half months insignificant where it was reasonable to infer that the defendant was engaged in a course of conduct continuing to the date of the issuance of the search warrant. While the passage of two years is significantly more than the passage of two and one-half months upheld in Tate, we do not find the information stale. Gigante testified that a lot of capital is required initially to start up a marijuana growing operation but once a certain amount of purchases are made the operations usually continue, even though the purchasers do not continue to purchase the initial equipment that was necessary. Additionally, other information contained in the affidavit indicated that a marijuana growing operation was in progress.
In his Motion to Suppress, defendant alleged that efforts to obtain records from UPS, South Central Bell Telephone Company, and Central Louisiana Electric Company (CLECO) violated his right to privacy. On appeal, defendant emphasized violation of his right to privacy in regard to the UPS records. Gigante testified at the hearing that DEA headquarters in Washington, D.C. subpoenaed UPS and obtained those records. (Subpoenas were also issued to South Central Bell and CLECO). Defendant has failed to show that these records are not public records or that he otherwise had a reasonable expectation of privacy in these records. We find no merit to this argument.
Defendant argues the affiant misrepresented the defendant's criminal history. Defendant asserts the information is misleading because the way in which the charges were suggested to the court made it appear that defendant had been convicted of all of these charges when that was not the case.
The affidavit clearly states that the defendant has "a lengthy criminal history, which includes the following drug-related charges....". (Emphasis supplied). The affidavit does not state that defendant was convicted of these charges. We find no false statements in that regard.
Defendant also contends that Gigante failed to indicate that the charges listed as June 6, 1985, and September 10, 1985, were the same. We have found no proof that these charges were the same.
The affidavit also states defendant's son, Hoyt Niel, "has a criminal history which includes driving under the influence of alcohol/drugs, theft, and introduction of contraband into the parish jail." Defendant argues that Gigante submitted false information with the intention of misleading the court in the affidavit concerning Hoyt Niel's criminal history for driving under the influence of *595 drugs. Defendant asserts that Deputy McCullough, who had given Gigante Hoyt Niel's criminal history, testified at the hearing that he had no knowledge of Hoyt Niel having a conviction for driving under the influence of drugs.
Again, Gigante did not assert in the affidavit that Hoyt Niel had been convicted of driving under the influence of drugs but that he had a criminal history which included that offense. She testified that she listed the information exactly as it appeared on Hoyt Niel's criminal history. Gigante testified that she did not know the disposition of those charges. Defendant has failed to prove that Gigante's statement in the affidavit is false. Even if it were false, the misrepresentation does not appear to be intentional, and the affidavit supports probable cause without reference to the incorrect facts.
Defendant takes issue with the allegation in the affidavit concerning telephone records which Gigante alleged were connected with growing companies which distributed marijuana equipment and seeds. Defendant asserts that when cross-examined about this allegation, Gigante admitted under oath that she had no personal knowledge of any of the information concerning the companies "Dyna-Grow" and "Wider Company" and that "Dyna-Grow" had never been charged or convicted of violating any federal law concerning the sale of equipment or seeds for growing any controlled dangerous substance.
Gigante testified that she was not aware of whether Dyna-Grow had ever been charged with the offense of sending marijuana seeds by parcel post across the United States. She testified that she had information from headquarters that Dyna-Grow sells items that are specifically used for marijuana growers and has sold to other marijuana growers in the past. Defendant has not proved that the affidavit contained false statements in this regard.
Defendant asserts that Gigante lied to the court in stating that a telephone number which was answered by a recording allegedly providing tips on how to grow marijuana was associated with High Times magazine.
In the affidavit, Agent Gigante stated that she called the 900 number that defendant's phone records indicated was placed on July 3, 1991. Gigante also stated that the recording stated: "Welcome to the new, improved High Times Hotline." Gigante further stated that the recording offered a menu of information, which included "growtips," the hemp tour, how to beat a urine test, and more. Gigante asserted in the affidavit that the recording "is believed to be associated with the High Times Magazine...." She testified at the hearing that High Times is a very popular name of the magazine, and she knew that "they" sponsor hotlines. Gigante testified that she just assumed the two were related. She thought it was significant that the magazine and hotline had the same name. Even if this statement in the affidavit were false, the record does not reveal an attempt to mislead the magistrate. Striking the statement regarding the connection between the magazine and hotline does not preclude a finding of probable cause.
As we appreciate his assertions, defendant contends, concerning the utility bills, that Gigante misled the court through (1) unlike comparison with other residences, (2) asserting that the average utility bill under $200 a month was abnormally high, and (3) claiming that she had experience covering large amounts of electricity used in high intensity lights.
Concerning the assertion of unlike comparison, Gigante testified that she asked CLECO to pick houses on the street at random so she would not bias which houses were picked. She testified that Deputy McCullough told her that the street was a residential street and the houses were pretty much the same on the street. Gigante also testified that she had seen those houses and that they are all residences with about the same structure from what she could observe. Additionally, Gigante explained that she used the term "abnormally high" as a comparison and that defendant's electric bill was abnormally high for that street from what she could determine. Concerning her experience with high intensity lights, Gigante stated that she had experience just through her training with the DEA. The record does not support that Gigante made false statements or attempted to mislead the magistrate in this regard.
*596 Defendant also suggests that Gigante's inclusion of the results of the thermal imager was potentially misleading because the agents did not make a record of their comparisons, the operator of the machine had no personal knowledge as to how the machine worked, there were no meters or gauges on the machine to demonstrate how much heat was emanating from a particular residence, and there were no requirements of certificates of good working order on the equipment. A thermal imager is used to measure the amount of heat emanating from a structure. Special Agent Robert Breard testified he received forty hours of training in using the device and is certified in the use of the device. Agent Breard testified that when he compared the picture or reading of defendant's house to other houses, "[t]here was a substantially noticeable difference between all of the other houses and Mr. Niel's house." Agent Gigante corroborated Agent Breard's testimony. Neither the record nor the affidavit indicates any attempt to mislead the court about the use or the readings of the thermal imager.
Defendant has not met his burden of proving the invalidity of the search warrant, and we find that the facts and circumstances cited in the affidavit supported the fair probability that contraband would be found in this defendant's residence.

ASSIGNMENT OF ERROR NO. 2
By this assignment of error, defendant contends the trial court erred by sentencing defendant to an excessive sentence, constituting cruel and unusual punishment. However, defendant expressly waived argument on this assignment of error. Since this assignment was not briefed on appeal, it is considered abandoned per Uniform Rules-Courts of Appeal 2-12.4.

DISPOSITION
We affirm defendant's conviction and sentence.
AFFIRMED.
NOTES
[*] Honorable William A. Culpepper participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.