362 So.2d 526 (1978)
STATE of Louisiana
v.
Mark J. LAMARTINIERE.
No. 61621.
Supreme Court of Louisiana.
September 5, 1978.
Ron S. Macaluso, Seale, Sledge, Macaluso & Ross, Hammond, for defendant-respondent.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leonard E. Yokum, Dist. Atty., Joseph H. Simpson, Asst. Dist. Atty., for plaintiff-relator.
DIXON, Justice.
Defendant Mark J. Lamartiniere was charged by bill of information with arson with intent to defraud in violation of R.S. 14:53. A motion to suppress evidence seized pursuant to a search warrant authorizing the search of a storage unit rented from the Tangi Store All in Hammond, Louisiana was filed by the defendant and, after a hearing, the trial court ordered the evidence suppressed. We granted the State's application for supervisory writs in order to review the trial court's ruling.
Evidence adduced at the hearing on the motion to suppress indicates that the defendant's residence burned on November 27, 1977. The circumstances of the fire raised the suspicion of arson. On December 21, 1977 Samuel J. Robertson, a claims representative *527 for the defendant's home insurer, Allstate Insurance Company, received a letter from the defendant listing the items claimed to have been destroyed in the fire. Robertson delivered the letter to Detective Al Bignar of the Tangipahoa Parish Sheriff's Department. On the following day Bignar appeared before a judge, swore to the accuracy of an affidavit, and was issued a search warrant for the search of the defendant's storage unit. The affidavit contained the following statement of facts:
"Detective Al Bignar investigated residence fire at 120 Kan Tally Estates, Hammond, Louisiana belonging to Mr. Mark Lamartiere (sic) at approximately 6:30 a. m., November 27, 1977 which appeared to be the result of arson. A five gallon green plastic container containing a small amount of combustible liquid was found near the patio doors on the outside also a five gallon green plastic container about 2/3 full of combustible liquid was found inside the house. The house also had the smell of diesel fuel or some type of flamable (sic) mixture. Also the house had very little furniture or contents. Further investigation determined that Mr. Lamartiere (sic) had rented storage space at Tangi Store All on October 9, 1977 for three months. A statement was obtained from neighbors who are respected citizens of the community and who are known for their truth and veracity that approximately three weeks prior to November 27, 1977, they observed the Lamartiere's (sic) loading merchandise from the home into a pickup truck one item in particular was the 3-wheel 5 h.p. tri-cat. On Wednesday, December 21, 1977, Mr. S. A. Robertson, adjuster for the Insurance Company which had the insurance on the Lamartiere (sic) residence and contents received a certified letter from Mr. Lamartiere (sic) listing all of the items reportedly lost in the fire. Articles listed in search warrant (illegible) the articles listed. Attached is a complete list received by Mr. Robertson. Information was received from a citizen of the community who is known for his truth and veracity that he observed the articles listed above in Unit 9 Building A, of Tangi Store All 1029 South Holly St., Hammond, La."
The search resulted in the seizure of certain items which the defendant had listed as destroyed in the fire.
Two serious issues were raised through the motion to suppress: first, whether the defendant's expectation of privacy in the storage unit was violated by the initial discovery of the unit's contents, and second, whether the warrant was invalid because the affidavit contained intentional misrepresentations of fact.
The Expectation of Privacy
The record shows that the defendant rented a ten foot by thirty foot storage unit from the Tangi Store All. The owner of Tangi Store All, Lou Faucette, described the unit as having a cement floor, metal walls and large, overhead doors at both ends. The unite have no windows and the walls meet the ceiling at both ends. Because of the pitch of the roof, there is a space of approximately one foot between the side walls and the ceiling at the center of the unit. This ventilation space is approximately twelve feet above the floor and opens into the adjoining units. Mr. Faucette stated that when the units are rented, the lessee supplies his own locks and that the management has no means of access unless the lessee so provides.
On December 14, 1977 Samuel Robertson, the claims representative, and Emerson G. Wilkinson, a fire marshal in the Department of Public Safety Office of Fire Protection, approached Mr. Faucette and learned that the defendant had rented a storage unit. Wilkinson and Robertson had been investigating the fire along with Detective Bignar of the sheriff's department. Mr. Faucette took them to the locked storage unit and the two investigators photographed the unit. Upon the investigators' request, Faucette opened the unit adjacent to the defendant's, which at that time was not rented. Wilkinson noted the ventilation space and requested Faucette to get a ladder. From atop the ladder first Wilkinson, *528 then Robertson peeked over the twelve foot wall into defendant's unit. Wilkinson testified that he was able to see household items which were missing from the burned house inside the unit without having to actually enter through the vent. Wilkinson told Detective Bignar of his discovery and requested that Bignar go to the storage unit to see the evidence himself. Gus Faucette, the son of the owner of the Tangi Store All, testified that Detective Bignar and another officer came to the unit after Wilkinson and Robertson and that they asked for the ladder, climbed up and took pictures of the interior of the defendant's storage unit. Eight days later, on December 22, 1977, Bignar submitted his affidavit and was issued the search warrant.
The evidence obtained through peeking over the wall was essential to the establishment of probable cause in the affidavit for the search warrant. The question is whether that action violated the defendant's expectation of privacy protected by the Fourth Amendment to the United States Constitution and Art. 1, § 5 of the Louisiana Constitution of 1974.[1]
It is said that it is the privacy of a person, and not places, which is protected by the Fourth Amendment. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Abram, 353 So.2d 1019 (La.1978); State v. Fearn, 345 So.2d 468 (La.1977). The United States Supreme Court explained this principle in the following simple manner:
". . . What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. . . . But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. . . ." 389 U.S. at 351, 88 S.Ct. at 511. (Citations omitted).
Justice Harlan, in his concurring opinion in Katz, posed a basic test by which the person's "expectation of privacy" may be measured. The Justice stated:
". . . My understanding of the rule that has emerged from prior decisions is that there is a two-fold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as `reasonable.'. . ." 389 U.S. at 361, 88 S.Ct. at 516.
Justice Harlan's test is helpful in determining the extent of this defendant's expectation of privacy. It is clear that the defendant had an actual, subjective expectation of privacy in the contents of his storage unit. The unit had no windows and no one could gain access without first obtaining the key from the defendant. The owners of the Tangi Store All testified that they represent to the prospective lessees that the units are not open to the public. And, though the unit did have the one foot ventilation space which opened into the next unit, the defendant would not be unreasonable in believing that no one would scale the twelve foot wall in order to see the contents of the unit.
We also find that the defendant's expectation of privacy is of a type which society at large would recognize as being reasonable. Most people would believe their property to be safe from uninvited view when that property is stored in a locked storage unit with no exterior openings, and only a one foot ventilation space twelve feet above the floor.
A citizen may have a reasonable expectation of privacy in an area which is not impervious to all possible invasion, cf. Katz v. United States, supra; State v. Fearn, supra. When that expectation is determined reasonable, the Fourth Amendment protects against intrusion through gymnastics such as those involved in the present case. Accordingly, we find that the defendant's *529 rights, protected under both the federal and state constitutions, were violated by the unwarranted invasion occasioned through the efforts of Wilkinson and Robertson. Further, without the information gained through that intrusion, the affidavit submitted for the search warrant fails to establish probable cause to search.
Misrepresentations in the Affidavit
In State v. Rey, 351 So.2d 489 (La.1977), this court adopted the reasoning of United States v. Thomas, 489 F.2d 664 (5th Cir. 1975), cert. den. 423 U.S. 844, 96 S.Ct. 79, 46 L.Ed.2d 64 (1975), and stated:
". . . when faced with an affidavit containing inaccurate statements the preferred approach is to excise the inaccurate statements and then examine the residue to determine if it supports a finding of probable cause. If, however, the misrepresentations were intentionally made, a different result is required. Because these distorted statements constitute a fraud upon the courts and represent impermissible overreaching by the government, a warrant based on an affidavit containing intentional misrepresentations must be quashed.
". . . The primary purpose of the exclusionary rule is the deterrence of such deliberate governmental wrongdoing, and this policy is best served by quashing the warrant." 351 So.2d at 492.
The testimony adduced at the hearing on the motion to suppress revealed several misrepresentations which must be considered "intentional" [2] within the meaning of Rey. First, and most serious, the affiant refers to Wilkinson, the fire marshal, only as a "citizen of the community," apparently to prevent the judge from learning of the State activities in peering over the wall into the defendant's storage area. To compound that deception, the affiant fails to mention that he himself had climbed the ladder and seen the goods. The apparent motive behind these omissions was to prevent, the magistrate from learning of possibly illegal searches of the defendant's property.
The affidavit is also deceptive in that it was written in a manner which intimates that all of the facts which it reveals were within the firsthand knowledge of the affiant. In truth, the facts contained in the affidavit were the result of combined investigative efforts and the affiant did not have firsthand knowledge of many of them. While it is not required that each of the investigators appear and swear to the affidavit, when that information is not within the personal knowledge of the affiant, he must so indicate in the affidavit. See State v. Culotta, 343 So.2d 977, 979 (La.1976). Without this information, the magistrate cannot properly evaluate the credibility of the information contained in the affidavit.
We find that the trial court properly ruled the evidence seized pursuant to the invalid search warrant inadmissible. Accordingly, we affirm its judgment and remand for further proceedings consistent with the views expressed herein.
SANDERS, C. J., dissents.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
I respectfully dissent. In every case where a violation of the fourth amendment is alleged, analysis must begin with the question of whether the fourth amendment is applicable. In Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the United States Supreme court announced the principle that the fourth amendment protects people and not places. Regardless of an individual's subjective expectation of privacy, however, the protection of the fourth amendment extends only to those expectations of privacy that are constitutionally justified. United States v. *530 White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). The disputed evidence in the instant case was located in a rental unit where a space of approximately one foot existed between the side walls and the ceiling opening leading into adjoining rental units. In my view, the facts of this case do not warrant the conclusion that defendant had a justifiable expectation of privacy in the area where the evidence was located. Accordingly, the fourth amendment is not applicable in this case.
NOTES
[1] The State conceded in brief that the activities of Fire Marshal Wilkinson could not be considered as those of a private citizen outside the scope of the Fourth Amendment protection against unreasonable searches and seizures.
[2] "Intentional" in this context means a deliberate act designed to deceive the issuing magistrate. State v. Rey, supra.