376 So.2d 107 (1979)
STATE of Louisiana
v.
Michael WOLLFARTH et al.
No. 64053.
Supreme Court of Louisiana.
October 8, 1979.
*108 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Richard J. Petre, Jr., Asst. Dist. Atty., for plaintiff-relator.
Thomas J. Ousley, New Orleans, for defendant Patrick Gleeson.
William J. O'Hara, III, Supervising Atty., New Orleans, Michael S. Cahn, Loyola Law School Clinic (Student Practitioner), for defendant Michael Wollfarth and defendants-respondents.
CALOGERO, Justice.
The state charged Michael Wollfarth and Alexander Tornabene with four counts of forgery, and additionally charged them along with Patrick Gleeson and Eugene Hyorth, with conspiracy to commit forgery. Evidence seized by officers of the New Orleans Police Department during the execution of a search warrant comprises part of the state's case against these defendants. At the hearing on their motions to suppress, the defendants contended that certain averments in the affidavit in support of the search warrant[1] constituted material misrepresentations[2] *109 and they sought to attack the veracity of the affiant and the truth of certain representations made by him. Defendants further argued that even accepting as true the contested averments, the affidavit as a whole did not supply the requisite probable cause to justify issuance of the search warrant. After the hearing at which the defense produced testimony of Wollfarth, his girl friend, and the wife of defendant Gleeson in support of its attack on the alleged misrepresentations (in addition to arguing that the affidavit's representations, in their entirety, did not establish probable cause), the trial court sustained the motions to suppress, without then assigning reasons for its ruling.
In its application for writs seeking review of that ruling, the state indicated that the trial court's ruling was based on the insufficiency of the affidavit. We granted the state's application for the reason that the affidavit in support of the search warrant seemed adequate. Defendants have in this Court, however, urged in brief and oral argument that a significant basis for the trial court's ruling was its determination that representations concerning the affiant's observations were inaccurate or false. A requested per curiam filed by the trial judge in this Court after oral argument established that this indeed was his determination.[3]
In order to establish the falsity of affiant's representations concerning observations during the course of his surveillance, the defendants had the burden of proving, by a preponderance of the evidence, that the representations were false. Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); State v. Paster, 373 So.2d 170 (La.1979). The three defense witnesses testified that Wollfarth and his girl friend, the only two persons to have access to their residence (the premises searched as a result of the execution of the warrant in the instant case) were at the home of their friends, the Gleesons, for the entire period of 4:00 P.M. to 6:00 P.M., December 1, 1978, the time period during which the affiant reported observation of conduct appearing to be drug transactions at the door of the Wollfarth residence. Only the affiant's testimony (by stipulation at the hearing to the effect that he would testify substantially in accordance with the averments regarding the surveillance appearing in the affidavit) maintained that the apparently criminal activity took place at the entrance to the Wollfarth residence at the time set forth in the affidavit. In light of the trial court's determination concerning the officer's alleged surveillance we cannot say that it erred in sustaining the motion to suppress, because these representations are crucial to the finding of probable cause.[4]
*110 Decree
For the aforestated reasons, the ruling of the trial court sustaining the defendants' motions to suppress is affirmed and the case is remanded to the trial court.
AFFIRMED AND REMANDED.
NOTES
[1] The affidavit sets forth:

"That on Friday, December 1, 1978, at about 2:00 P.M., Detective John Morse, assigned to the Major Offense BureauGeneral Assignment Section, received information from a reliable, confidential informant, whose information in the past has resulted in the arrest, conviction, and recovery of stolen property and controlled dangerous substances, of individuals involved in criminal activity. Said informant stated that Michael Woolfarth [sic] and Lester Bourg sometime during the past week to ten day's committed a robbery or burglary of a drugstore outside the City of New Orleans. Informant stated that in the commission of this crime on the drugstore these two individuals obtained quantity of controlled dangerous drugs and that both of the individuals were "strung out" on the drugs and were selling whatever they could of the drugs they weren't using, openly from their residence at 1826 Hermosa St.
Det. Morse then made a check of the Motion Computer on the two individuals and leanred [sic] the following: Lester Bourg is listed as a Burglary suspect and a career criminal. Michael Woolforth [sic] is listed as a career criminal and has prior arrests and convictions for Possession of Narcotics. Michael Woolforth [sic] gave the address of 1826 Hermosa St. when arrested by the N.O.P.D. on 11-14-78.
Det. Morse then on Friday, December 1, 1978 at about 3:00 P.M. went to the 1800 blk. of Hermosa St. and conducted a surveillance of the residence. The surveillance was conducted for approximately two hours and the following activity was observed. At about 4:15 P.M. Det. Morse observed a N/M walk to the residence from the corner of Magellan and Hermosa Sts. This n/m, who appears to be a narcotic addict, knocked on the front door of the residence. The door was opened by a w.m who reached out to the n/m and received from the n/m what appeared to be a quantity of U.S.Currency. The w/m then shut the door of the residence and the n/m waited on the porch for about a minute, until the w/m re-opened the door and handed the n/m a small packet which the n/m placed in his sock after examining it. The n/m, then walked hurriedly back to the intersection of Hermosa and Magellan Sts. and then out of sight. At about 5:00 P.M. Det. Morse observed a n/f, early twenties, walk to the residence from Hermosa and Magellan Sts. and knock on the front door. The door was opened by the same W/M. Det. Morse observed the n/f hand the w/m a quantity of the U.S. Currency and the w/m went back into the residence. He returned to the door shortly after and handed to the N/F, what appeared to be several pills. This w/m appeared to be counting out the pills as he placed them into the n/f hand. She then placed the items into a hankerchief [sic] in her blouse. She then walked back to the intersection of Magellan and Hermosa St. and then out of sight. No other activity was observed and the surveillance discontinued at this time.
Det. Morse was then contacted by the informant on Monday, December 4, 1978 at about 10:00 A.M. and the informant stated that the individuals were worried about a possible surveillance on the residence and were preparing to move the drugs to an other location on Monday afternoon.
At about 11:00 A.M. Det. Morse sent a Statewide Teletype message to all Police and Sheriff's Departments requesting that anyone having handled a robbery or burglary of a drugstore to contact him. At about 12:20 P.M., Monday, December 4, 1978, Det. Morse received a call from Det. Jimmy Hay of the Alexandria City Police Department. Det. Hay stated [sic] that on Monday, November 27, 1978, at about 10:00 P.M. the Katz and Besthoff Drug Store located at the Westgate Shopping Center in Alexandria, La., reported an armed robbery in which a w/m in his mid twenties dressed like a woman in blue jeans and a purple ladies' blouse with a yellow butterfly on the blouse and carrying a dark colored purse and a 25 or 32 caliber automatic. This individual was also wearing a brown ladies' wig. Taken in the armed robbery was approximately $3,000.00 in assorted dangerous drugs and about $6,000.00 in U.S. Currency. Further information obtained from the victims of the armed robbery that the subject wore a dark colored bandana across his face.
* * *"
[2] The third paragraph of the affidavit, relating affiant's surveillance, is the portion attacked.
[3] The trial judge stated:

". . . the affidavit itself was traversed by the testimony of three witnesses at the hearing on the Motion to Suppress. Each of the witnesses testified in direct contradiction to the police officer. This Court is of the opinion that said testimony successfully negated the section of the affidavit concerning the police officer's surveillance."
[4] Regardless of whether the misinformation was intentionally or unintentionally included, this affidavit must fall. See State v. Paster, supra. Even if we assume that the misrepresentations were unintentional and test for probable cause without reference to the allegations regarding the surveillance, the affidavit is insufficient. The state so conceded at the suppression hearing. Lack of an averment that the informant personally observed the narcotics at Wollfarth's residence and sales thereof, or failure of the affidavit to set forth other reasons in sufficient factual detail which would warrant the magistrate's conclusion that the information is reliable results in the affidavit's failure to meet the "two-pronged test" of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). An affidavit failing to meet the "two-pronged test" may nevertheless be adequate if it contains other information sufficient to ripen suspicions created by the informant's tip into a judgment that a crime is being committed and the items to be seized may be found on the premises for which the warrant is sought. See State v. Williams, 338 So.2d 1365 (La.1976), quoting Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).