**Mark J. LAMARTINIERE**
v.
**Emerson G. WILKERSON.**

Civ. A. No. 78–3849.

United States District Court,
E. D. Louisiana.

June 18, 1980.

Ron S. Macaluso, Seale, Sledge, Macaluso & Ross, Hammond, La., for plaintiff.

Plauche F. Villere, Jr., Legal Counsel, Dept. of Public Safety, New Orleans, La., for defendant.

## ORDER AND REASONS

DUPLANTIER, District Judge.

This is a suit for an alleged deprivation of civil rights under 42 U.S.C. §§ 1983, 1985 and 1986. Plaintiff's house was destroyed by fire. Defendant Wilkerson, as part of his duties as a fire safety inspector employed by the Louisiana State Fire Marshal's Office, investigated the fire at plaintiff's home. The civil rights claim arises out of an incident in the course of that investigation during which defendant Wilkerson climbed a ladder and looked over a wall into a storage unit rented by plaintiff. Plaintiff alleges that this "search" violated his rights under the Fourth Amendment. Plaintiff seeks damages for the allegedly unlawful "search" and for the consequences he claims flowed from it: plaintiff's unlawful arrest and imprisonment until bail was arranged, the loss of his job, and the embarrassment and humiliation caused him and his family.[1]

1. Plaintiff concedes that his entire case rests upon defendant's liability with respect to the "peeking" incident. If this "search" gives rise to no liability, then the subsequent arrests were also valid steps in the investigation.

The case was tried to the court without a jury and taken under advisement. For the following reasons, it is ordered that plaintiff's complaint be dismissed.

The fire at plaintiff's home and subsequent investigation led to his being indicted in state court for arson with intent to defraud. In connection with that case, the Louisiana Supreme Court, with two dissents, ruled that the "search" of plaintiff's storage unit, the "peeking" over the wall referred to earlier, was illegal. The court thus affirmed the trial court's suppression of evidence obtained as the fruits of that search. *State v. Lamartiniere*, 362 So.2d 526 (1978).

Before plaintiff would be entitled to damages under § 1983, the court would have to find that the search was unlawful and that his rights under the Fourth Amendment were violated thereby. However, because we conclude that in any event defendant has a valid qualified immunity defense, we need not decide whether the search itself was illegal. We simply note that there are several decisions in this circuit which appear to be inconsistent with the Louisiana Supreme Court's holding on the Fourth Amendment issue. *See, e. g., U. S. v. Jackson*, 588 F.2d 1046 (5th Cir.1979) *cert. denied*, 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (listening through crack at bottom of connecting motel room door did not violate Fourth Amendment); *Gil v. Beto*, 440 F.2d 666 (5th Cir.1971) (peering through partially opened venetian blinds into defendant's motel room was not illegal search). Those decisions rely on the general proposition that police officers who are in a place where they are lawfully entitled to be, and merely observe what is in plain view, do not violate Fourth Amendment rights. *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) (per curiam). We also note that the storage shed in this case is even less akin to a

person's private dwelling than are the motel rooms in the cases cited. The court noted in *Jackson, supra*, that the extent of privacy which one may reasonably expect in a motel room is far less than in one's home. In a ranking of places in terms of degree of expectation of privacy, one unit among many in a public storage facility must be near the bottom.

■ In *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the Supreme Court held that the defense of "good faith and probable cause" was available to police officers in an action for false arrest and imprisonment under § 1983. This good faith defense, which has been considered to be in the nature of a qualified immunity, has also been afforded other officers of state and local governments. *See Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) (prison officials and officers); *O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) (superintendent of state hospital); *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (school board members); and *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (state Governor and other executive officers for discretionary acts). We think it clear that a state fire marshal, performing the duties imposed upon his office, is entitled to the same defense.

■ The issue then is whether plaintiff has proved that defendant lacked good faith in performing his duties, and specifically in "peeking" over the wall. Or, to state it as the court did in *Wood v. Strickland, supra*, the plaintiff must show that defendant "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]," or that "he took the action with the malicious intention to cause a deprivation of constitu-

There is no evidence that Wilkerson is responsible for the misrepresentations in the application for a search warrant that resulted in a second search. These misrepresentations were

an alternative ground for the Louisiana Supreme Court's granting of the motion to suppress in the arson case against Lamartiniere. *See* 362 So.2d at 529.

tional rights or other injury to the [plaintiff]." 420 U.S. at 322, 95 S.Ct. at 1001. The court concludes that plaintiff has not demonstrated the requisite motivation on the part of defendant which would overcome defendant's good faith—qualified immunity defense.

Most of the facts leading up to and surrounding the "peeking" incident are not in dispute. Plaintiff concedes that this was a case of arson. In any arson case, the property owner himself is a suspect. Defendant does not deny that he suspected that plaintiff was the arsonist. But that suspicion is no more than good investigative work; it does not imply bad faith or malice. Indeed, there was ample justification for defendant to suspect plaintiff, based upon facts defendant learned during the investigation and upon plaintiff's actions and statements after the fire.

Coincidentally, defendant had visited plaintiff's house before the fire as a prospective purchaser. After the fire, he noted that some furniture and other household articles seemed to be missing. Neighbors of plaintiff had told defendant that they had seen the plaintiff loading furniture in a pickup truck a few weeks before the fire. Defendant checked with businesses in the area that rented storage space and learned that plaintiff had rented a storage unit. The unit was locked, but the adjacent unit was empty. The owner of the storage unit rental business allowed defendant and an insurance investigator to enter the adjoining unit. Because of the pitch of the roof, there was a space of about one foot between the top of the wall of plaintiff's storage unit and the roof. defendant borrowed a step-ladder from the owner and, without touching the wall which divided plaintiff's unit from the adjoining one, looked over the wall to observe the contents stored in the unit.

Defendant believed in good faith that he was not violating plaintiff's constitutional rights. The following quote from his testimony indicates his purpose and state of mind:

[When] I climbed to the top of that step-ladder on Mr. Faucette's [the owner of the storage business] property and was able to see in that compartment without ever touching it in no way, I did not, at that time, think that I was violating any law.

Two justices of the Louisiana Supreme Court agreed, and as shown by the Fifth Circuit decisions cited above, defendant may have been correct in his belief that his actions did not violate the U.S. Constitution.

Not every search which is ultimately declared illegal by a court gives rise to a damage action under § 1983 and the other civil rights statutes. "The imposition of monetary costs for mistakes which were not unreasonable in the light of all the circumstances would undoubtedly deter even the most conscientious . . . decisionmaker from exercising his judgment, independently, forcefully, and in a manner best serving the long-term [public] interest." *Wood v. Strickland*, 420 U.S. at 319–320, 95 S.Ct. at 999–1000. "[A] police officer [or a fire marshal] is not charged with predicting the future course of constitutional law." *Pierson v. Ray*, 386 U.S. at 557, 87 S.Ct. at 1219.

If defendant violated plaintiff's Fourth Amendment rights at all, he certainly did not act "with such disregard of the [plaintiff's] clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith." *Wood v. Strickland*, 420 U.S. at 322, 95 S.Ct. at 1001.