414 So.2d 335 (1982)
STATE of Louisiana
v.
Oliver BRANNON.
No. 66718.
Supreme Court of Louisiana.
May 17, 1982.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Joe Lotwick, Kay Kirkpatrick, Asst. Dist. Attys., for plaintiff-appellee.
Joseph P. Brantley, IV, Baton Rouge, Richard V. Burnes of Gravel, Burnes & Robertson, Alexandria, for defendant-appellant.
WATSON, Justice.[*]
Defendant, Oliver Brannon, pled guilty to possession of marijuana with intent to distribute in violation of LSA-R.S. 40:967.[1] He was sentenced to five years with the Department of Corrections and a fine of $15,000 and costs, or one year in parish prison. The only issue on appeal is whether the trial court erred in not granting defendant's *336 motion to suppress the marijuana. State v. Crosby, 338 So.2d 584 (La., 1976).
It was stipulated that approximately seventy pounds of marijuana were seized from a pickup truck parked in the yard of a residence at 2424 Pliney Street in Baton Rouge. The home and pickup truck are owned by Lenora R. Brannon, defendant's mother. A warrant was secured to search the Brannon residence and pickup on the basis of the following affidavit:
"Dets. Greg Phares and Barry Bannister affiant(s) now appear(s) before the undersigned Judge authorized to issue warrants in criminal cases, and makes this affidavit under oath, in su-port (sic) of the issuance of a search warrant, to search the following described place: A residence, together with a garage apartment and all vehicles, located at 2424 Pliny Street, Baton Rouge, La. and to seize, secure, tabulate and make return thereof according to law the following property or things which have been used in the commission of, or which constitute evidence of, criminal conduct, to-wit: Controlled dangerous substances, to wit, marijuana, cocaine, and paraphenalia associated with said drugs.
"Affiant(s) say that he had probable cause to believe that the above-listed things to be seized are now concealed and located upon the above described premises based upon the following facts: On 12-4-78 at 9:30 A.M. a cooperating individual placed a telephone call to Casey Brannon at 387-1852. In the conversation, the cooperating individual (C.I.) spoke with Brannon about obtaining sixty (60) pounds of marijuana. Brannon told C.I. that he had sixty (60) pounds left and told C.I. to come look at the marijuana.
"The call was placed from a police phone, taped, and witnessed by affiants. The tape was placed in evidence.
"Phone number 387-1852 was confirmed as that of Oliver P. (Casey) Brannon, 3434 Pliny Street, Baton Rouge.
"Affiants further state that they have had reliable information on and have been conducting narcotics investigation on Oliver P. (Casey) Brannon for a period of approximately two years.
"The C.I. is identified as David G. Broussard."

* * * * * *
The affidavit was executed on December 4, 1978. At the hearing on the motion to suppress, Police Officer Greg Phares testified that he had arrested David G. Broussard the previous night with twenty-five to thirty pounds of marijuana. Broussard said the contraband had been obtained from one Casey Brannon residing at 2424 Pliney Street, Baton Rouge. Broussard had been "busted" before. The officers promised Broussard that if his cooperation "got more than we got off him," he would "walk".[2] Broussard then placed a telephone call to a number which he identified as being that of Casey Brannon. The conversation between the two was recorded. Officer Phares listened to both sides of the conversation.
The transcript of the taped conversation is attached as an appendix to this opinion. The phone was answered by someone Broussard addressed as Daniel. Broussard advised Daniel that he wanted a "sack" for some boys in Lake Charles, would pay cash and would be over in a little bit to consummate the transaction. The transcript does not identify the person to whom Broussard talked as Casey Brannon. It does not mention sixty pounds of marijuana or any quantity of marijuana. The parties refer only to a sack. According to Officer Phares' testimony, a sack signifies approximately sixty pounds of marijuana in a garbage bag. However, this explanation is not contained in the affidavit. The affidavit states that the phone number was confirmed as being that of Oliver P. (Casey) Brannon, but it developed at the hearing that the number is listed in the name of Mrs. Lenora Brannon.
It is significant that Officer Phares listened to both sides of the conversation. Thus, his representation in the affidavit of the substance of that conversation was his own and not that of informant Broussard. *337 The statement that Broussard "spoke with Brannon about obtaining sixty pounds (60) of marijuana. Brannon told C.I. that he had sixty pounds (60) left and told C.I. to come look at the marijuana." is false. That information is not contained in the conversation between Brannon and Broussard, even granting that Brannon is in fact the Daniel with whom Broussard spoke on the telephone.
If the affiants had correctly stated that the parties discussed purchase of a sack and that the term sack is street parlance for sixty pounds or more of marijuana, there would have been no misrepresentation to the magistrate. These affiants synthesized their information and presented the magistrate a conclusion rather than the supporting facts. An affidavit must recite facts rather than conclusions. LSA-C.Cr.P. art. 162. The magistrate's function was usurped; it is his job to weigh the facts and judge independently whether probable cause exists. State v. Morstein, 404 So.2d 916 (La., 1981).
An affidavit supporting a search warrant is presumed to be valid. Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Defendant at the hearing had the burden of proving that the representations in the affidavit by the affiants were false. State v. Wollfarth, 376 So.2d 107 (La., 1979). When a defendant proves that an affidavit contains false statements, it should be determined whether the misrepresentations are intentional or unintentional. State v. Paster, 373 So.2d 170 (La., 1979). Here, however, the result is the same in either instance. Even granting that the distorted report of the telephone conversation was inadvertent and represented Officer Phares' impression of its substance, the inaccuracies must be deleted. State v. Rey, 351 So.2d 489 (La., 1977); State v. Lamartiniere, 362 So.2d 526 (La., 1978). Leaving aside the false material in this affidavit, the remainder does not furnish probable cause for issuance of a warrant.
For the foregoing reasons, the motion to suppress is granted; defendant's conviction and sentence are vacated; and the matter is remanded for further proceedings.
REVERSED AND REMANDED.
LEMMON, J., dissents and will assign reasons.
H. CHARLES GAUDIN, J. ad hoc, dissents and assigns reasons.
PHILIP C. CIACCIO, J. ad hoc, I dissent.

APPENDIX
TAPED INTERVIEW WITH DAVID G. BROUSSARD AND CASEY BRANNON.
DATE: 12/4/78
OFFICERS: GREG PHARES AND BARRY BANNISTER
DIAL TONE
DIALING
PHONE RINGING
Broussard: That number is on Perkins Road? Did ya'll get an address on it? Ain't nobody answering.
PHONE SOUNDS
Broussard: This is Casey's number.
PHONE SOUNDS
Daniel: Hello.
Broussard: Daniel, what you doing?
Daniel: Not answering the fucking phone.
Broussard: You sleeping?
Daniel: Yea.
Broussard: Kind of early isn't it?
Daniel: Yea.
Broussard: Hey.
Daniel: Did you just call and let it ring fifty times?
Broussard: Yes. Hey, uh, them boys from Lake Charles?
Daniel: Yep.
Broussard: They want a sack.
Daniel: I only got one. I went out there last night and just got what was left and that's it too. So, you know, uh, if you want to come look at what I got, that's cool.
*338 Broussard: They want one and they will pay for it you know, the whole thing. I still owe you for the other one I got.
Daniel: Yea.
Broussard: I got part of it out and still got part of it. But these boys from Lake Charles want a whole thing you know. Cash on the barrel head.
Daniel: When do you want to look at it?
Broussard: Well, I can come over there and look at it anytime you want. You got it.
Daniel: Yea, it's all ready, man. I just got it all put together about 1:00 last night. Your timing was perfect.
Broussard: You don't want these guys to come over to your house?
Daniel: Un-uh.
Broussard: Do you want me to come over there and get it and bring it to them and bring your mon.
Daniel: Yea, that will be cool.
Broussard: I'll come over in just a little bit then.
Daniel: Why don't you wait about 30 or 45 minutes.
Broussard: Okay.
Daniel: Bye.
Broussard: Bye.
Officer: The preceeding (sic) conversation took place Monday, December 4, 1978, approximately 9:45 A.M. The location was the Baton Rouge City Police Detective Office, Chief John Landry's office. The conversation initiate (sic) from 389-4868 to 387-1832. The number of a Casey Brannon. The call was initiated by a cooperating individual, a David C. Broussard. Persons present in the room at the time of the conversation, Det. Greg Phares and Barry Bannister, Baton Rouge City Police Detective Office, Det. Greg Phares, Baton Rouge City Police Narcotics.
GAUDIN, Justice Pro Tem., dissenting.
I respectfully dissent.
In requesting the search warrant from Judge Douglas Gonzales, the two police officers submitted a supporting affidavit in which they stated:
(1) That they were actual witnesses to a planned drug transaction, having overheard a telephone conversation (which had been recorded) between a cooperating individual by the name of David Broussard and the person identified in the affidavit and search warrant as Oliver P. (Casey) Brannon;
(2) That the call was made to Brannon at his confirmed telephone number, which number fit a particular municipal address, 2424 Pliney Street in Baton Rouge;
(3) That police had been conducting a narcotics investigation of Brannon for approximately two years; and
(4) That in the telephone conversation, Brannon said that he had 60 pounds of marijuana to sell and that he (Brannon) told Broussard "... to come look at the marijuana."
The affidavit clearly stated probable cause in accord with LSA-C.Cr.P. art. 162, and the magistrate issued the search warrant. Police then seized approximately 70 pounds of marijuana.
A motion to suppress was heard on June 8, 1979, during which the defense argued that the supporting affidavit contained false information.
While a reading and careful consideration of the Broussard-Brannon recordation can lead to no conclusion but that an illegal drug transaction was contemplated, it is true that there are variations between the wording of the affidavit and the overhead conversation. For example, the substance in Brannon's possession is referred to as "a sack" during the conversation and as 60 pounds of marijuana in the warrant.
Also, the telephone number was not listed as Brannon's, but was listed in the name of his mother, Mrs. Lenora Brannon, who also resided at 2424 Pliney Street.
The only witness at the suppression hearing was Greg Phares, one of the police officers who had signed the supporting affidavit. He was called by the prosecution not to expand on or rehabilitate the affidavit *339 but to show that there had been no intentional misrepresentations by the affiants to Judge Gonzales and that the information in the affidavit was factual.
Phares said, among other things, that "Daniel" was a nickname used by Brannon and that, in street language, 60 pounds of marijuana is a sack.
Phares said:
"Sack would signify approximately 60 or slightly more pounds of marijuana which is generally but not always contained in one of those black Hefty-type garbage bags. That's how they often pack it."
Neither the Supreme Court of the United States nor the Supreme Court of Louisiana has ever required a supporting affidavit to be 100 per cent accurate. It is necessary, however, that the affidavit contain reasonably trustworthy information sufficient to support the belief that evidence or contraband may be found at the site to be searched. The magistrate's judgment must be based on a rational reading of the entire affidavit.
In State v. Nix, La., 327 So.2d 301; State v. Smith, La., 322 So.2d 197; State v. Huckaby, La., 368 So.2d 1059; State v. George, La., 273 So.2d 34; and in numerous other cases, this Court found probable cause even though the affidavits had discrepancies of various magnitude.
Affidavits in support of search warrants must be given commonsense and realistic interpretation by magistrates and the courts, and doubtful or marginal cases will be resolved in favor of upholding the validity of the warrant. State v. Babbitt, La., 363 So.2d 690; State v. Chaffin, La., 324 So.2d 369, certiorari denied, 426 U.S. 907, 96 S.Ct. 2228, 48 L.Ed.2d 832; and State v. Sierra, La., 338 So.2d 609.
From the Sierra opinion:
"Affidavits must be tested and interpreted... in a commonsense and realistic fashion. A grudging or negative attitude by reviewing courts will tend to discourage police officers from submitting their evidence to a judicial officer before acting. United States v. Ventresca, 380 U.S. 102 [85 S.Ct. 741, 13 L.Ed.2d 684]... We have noted that magistrates are not to be confined to niggardly limitations or by restrictions on their common sense. Their determinations of probable cause should be paid great deference by reviewing courts and, although it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants..."
Considering (1) the clear indication that the affiants did not intentionally or otherwise mislead the magistrate, (2) the fact that the differences between the affidavit's wording and the telephone recording were inconsequential and (3) the probable cause and reasonableness tests previously applied by this Court, the trial judge was correct when he denied the motion to suppress. Brannon's plea of guilty and sentence should stand.
There is yet another consideration regarding the tape's posture. The affidavit states: "The tape was placed in evidence." Thus, it may be that the recordation was a part of and within the four corners of the affidavit, much like a magazine or movie film attached to an affidavit supporting an obscene materials search warrant, and could have been considered by Judge Gonzales when he made his probable cause finding.
The record does not indicate whether the tape was annexed to the affidavit, but this matter could be remanded to the trial judge for such a determination.
Finally, it should be noted that Brannon did not contend or argue that the warrantless electronic surveillancei.e., the recording of the telephone conversationwas an invasion of privacy and therefore unconstitutional, as urged in a similar matter now pending before the Supreme Court of Louisiana.[1]
*340 Regardless, it is ironic that the tape of the Broussard-Brannon conversation, something made and preserved by the police to further substantiate the case against Brannon, was the tool used to successfully attack the supporting affidavit's validity.
NOTES
[*] Judges Israel M. Augustine, Jr., and Philip C. Ciaccio of the Court of Appeal, Fourth Circuit, and H. Charles Gaudin of the Court of Appeal, Fifth Circuit, participated in this decision as Associate Justices Ad Hoc joined by Justices Calogero, Dennis, Watson and Lemmon.
[1] Marijuana is presently a Schedule I drug; its possession is a violation of LSA-R.S. 40:966.
[2] Broussard was subsequently released.
[1] State v. Reeves, Case No. 81-0909.