LANIER, Judge,
concurring.
I concur in the result. The defendants have a valid qualified immunity defense.
The Louisiana Constitution of 1974 became effective at twelve o’clock midnight on December 13, 1974. La. Const, of 1974, art. XIV, § 35. The operative facts of this case took place on December 14, 1977.
In State v. Lamartiniere, 362 So.2d 526, 528-529 (La.1978), a five judge majority of the Louisiana Supreme Court used the following rationale to hold that Mark Lamarti-niere’s privacy rights had been violated:
Justice Harlan’s test is helpful in determining the extent of this defendant’s expectation of privacy. It is clear that the defendant had an actual, subjective expectation of privacy in the contents of his storage unit. The unit had no windows and no one could gain access without first obtaining the key from the defendant. The owners of the Tangi Store All testified that they represent to the prospective lessees that the units are not open to the public. And, though the unit did have the one foot ventilation space which opened into the next unit, the defendant would not be unreasonable in believing that no one would scale the twelve foot wall in order to see the contents of the unit.
We also find that the defendant’s expectation of privacy is of a type which society at large would recognize as being reasonable. Most people would believe their property to be safe from uninvited view when that property is stored in a locked storage unit with no exterior openings, and only a one foot ventilation space twelve feet above the floor.
A citizen may have a reasonable expectation of privacy in an area which is not impervious to all possible invasion, cf. Katz v. United States [389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) ], supra; State v. Fearn [345 So.2d 468 (La.1977) ], supra. When that expectation is determined reasonable, the Fourth Amendment protects against intrusion through gymnastics such as those involved in the present case. Accordingly, we find that the defendant’s rights, protected under both the federal and state constitutions, were violated by the unwarranted invasion occasioned through the efforts of Wilkinson [sic] and Robertson. Further, without the information gained through that intrusion, the affidavit submitted for the search warrant fails to establish probable cause to search.
(Emphasis added)
Although the majority based their decision on the federal and state constitutions, they primarily relied on the United States Constitution’s Fourth Amendment. The majority did not assert the Louisiana Constitution afforded greater rights to Lamartini-ere under the facts. Justices Sanders and Marcus dissented from this rationale. In his dissenting opinion, Justice Marcus observed as follows:
The disputed evidence in the instant case was located in a rental unit where a space of approximately one foot existed between the side walls and the ceiling opening leading into adjoining rental units. In my view, the facts of this case do not warrant the conclusion that defendant had a justifiable expectation of privacy in the area where the evidence was located. Accordingly, the fourth amendment is not applicable in this case. Lamartiniere, 362 So.2d at 530.
Lamartiniere subsequently filed civil suits for damages against Wilkerson in state and federal court. The federal district court held that Lamartiniere did not have a valid claim against the defendants under 42 U.S.C. §§ 1983, 1985 and 1986 with the following rationale:
An issue which would have to be resolved before defendant would be liable under 42 U.S.C. § 1983 is whether defendant’s “search” of the storage unit violated plaintiff’s rights under the Fourth Amendment. However, because we conclude that in any event defendant has a *1162 valid qualified immunity defense, we need not decide whether the search itself was illegal. We simply note that there are several decisions in this circuit which appear to be inconsistent with the Louisiana Supreme Court’s holding on the Fourth Amendment issue. See, e.g., U.S. v. Jackson, 588 F.2d 1046 (5th Cir.1979) cert. denied, [442 U.S. 941] 99 S.Ct. 2882 [61 L.Ed.2d 310] (listening through crack at bottom of connecting motel room door did not violate Fourth Amendment); Gil v. Beto, 440 F.2d 666 (5th Cir.1971) (peering through partially opened Venetian blinds into defendant’s motel room was not illegal search). Those decisions rely on the general proposition that police officers who are in a place where they are lawfully entitled to be, and merely observe what is in plain view, do not violate Fourth Amendment rights. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) (per curiam). We also note that the storage shed in this case is even less akin to a person’s private dwelling than are the motel rooms in the cases cited. The court noted in Jackson, supra, that the extent of privacy which one may reasonably expect in a motel room is far less than in one’s home. In a ranking of places in terms of degree of expectation of privacy, one unit among many in a public storage facility must be near the bottom.
[[Image here]]
Wilkerson believed in good faith that he was not violating plaintiff’s constitutional rights. The following quote from his testimony indicates his purpose and state of mind:
[When] I climbed to the top of that stepladder on Mr. Faucette’s [the owner of the storage business] property and was able to see in that compartment without ever touching it in no [sic] way, I did not, at that time, think that I was violating any law.

Two justices of the Louisiana Supreme Court agreed, and as shown by the Fifth Circuit decisions cited above, Wilkerson may have been correct in his belief that his actions did not violate the U.S. Constitution.

Not every search which is ultimately declared illegal by a court gives rise to a damage action under § 1983 and the other civil rights statutes. “The imposition of monetary costs for mistakes which were not unreasonable in the light of all the circumstances would undoubtedly deter even the most conscientious ... deci-sionmaker from exercising his judgment, independently, forcefully, and in a manner best serving the long-term [public] interest.” Wood v. Strickland, 420 U.S. [308] at 319-320, 95 S.Ct. [992] at 999-1000 [43 L.Ed.2d 214]. “[A] police officer [or a fire marshal] is not charged with predicting the future course of constitutional law." Pierson v. Ray, 386 U.S. [547] at 557, 87 S.Ct. [1213] at 1219 [18 L.Ed.2d 288].
If defendant violated plaintiff’s Fourth Amendment rights at all, he certainly did not act “with such disregard of the [plaintiff’s] clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith.” Wood v. Strickland, 420 U.S. at 322, 95 S.Ct. at 1001.
(Emphasis added)
See Defendants’ Exhibit #44.
In Moresi v. State, Department of Wildlife & Fisheries, 567 So.2d 1081, 1094 (La.1990), appears the following:
Accordingly, we believe that a qualified immunity is justified in an action against state officers or persons acting under color of state law for damages caused by a violation of Article I, § 5 of the Louisiana Constitution. Consequently, a plaintiff’s allegation and proof of conduct under color of state law that deprived him or her of a right secured by Article I, § 5 may not always assure the plaintiff of recovery. If the defendant shows that the state constitutional right alleged to have been violated was not clearly established, the defendant is entitled to qualified immunity.
Under the above circumstances, the constitutional right in question was not clearly *1163 established and Wilkerson had qualified immunity.