607 So.2d 974 (1992)
STATE of Louisiana
v.
Robert ROSE.
No. 91-KA-2151.
Court of Appeal of Louisiana, Fourth Circuit.
October 29, 1992.
Writ Denied February 11, 1993.
*975 Frederick J. King, Jr., New Orleans, for appellant.
Harry F. Connick, Dist. Atty., Elizabeth Revere, Asst. Dist. Atty., New Orleans, for appellee.
Before CIACCIO, WARD and ARMSTRONG, JJ.
CIACCIO, Judge.
Defendant, Robert C. Rose, was charged by bill of information with possession with intent to distribute marijuana. R.S. 40:966. He filed a motion to suppress evidence and a confession which the trial court denied. On June 21, 1990, the defendant was found guilty as charged in a judge trial. The trial judge sentenced him to eight years, suspended, five years inactive probation, ordered him to pay $500.00 to the Judicial Expense Fund and court costs of $159.00. Defendant appealed.
On August 2, 1989, Special Agent Wayne Anders of the Drug Enforcement Agency was contacted by Jesus Veliz of El Paso, Texas. As a result of the information, he obtained a search warrant for the boxes based on his affidavit which stated:
At approximately 6:00 p.m. on August 1, 1989, DEA New Orleans was notified that Officer Jesus Veliz of the El Paso, Texas Police Department was working the El Paso airport with his narcotic trained dog `Onyx.' The dog alerted for the presence of drugs on the above-described boxes. The dog has been drug certified by the North American Police Work Dog Association on July 1989. Veliz indicated the dog bit one of the *976 boxes after alerting, and Veliz marked the boxes J.S. 8/2/89, notified UPS and New Orleans DEA, and allowed the boxes to be shipped to New Orleans for interception by DEA. DEA intercepted the boxes at approx. 6:45 a.m. on August 3, 1989. DEA verified the information received from Officer Veliz and found the boxes to be identical to those described by Veliz. DEA confirms that the box bitten by `Onyx' has an aroma associated with drugs coming from the box.
Anders opened the boxes at the United Parcel Service Terminal and found they contained 21.5 pounds of marijuana.
The United States Attorney's Office declined to investigate so Anders contacted Detective Ronnie Austin of the New Orleans Police Department.
Working together, the DEA and NOPD arranged for Detective Pedro Marino to pose as a UPS delivery man. Dressed in a UPS uniform and driving a UPS truck, Marino delivered the boxes to the address written on the box, 1030 Louisa Street. The addressee was "T. Shultz c/o E. Miller." John Thompson answered the door and identified himself as E. Miller. He signed for receipt of the boxes and Marino left.
During the delivery, DEA agents and NOPD officers kept the house under surveillance.
The defendant left 1030 Louisa within minutes of the delivery. He put the two boxes in the bed of a white pickup truck. A few blocks from the house, the agents stopped the truck and arrested the defendant. They advised him of his rights, and the defendant told them he had met two men in the Pub Lounge who offered him $300.00 to accept the packages and deliver them to unknown parties at Magazine and Poydras Streets. Officer Bret Thorne rode with the defendant in the defendant's truck to that intersection where they waited for over an hour. No one approached the truck.
The defendant consented to a search of his residence on Mazant Street. The officers confiscated less than one ounce of marijuana, and rolling papers.
Detective Austin testified that Thompson was arrested at Louisa Street and that he stated that he knew what was in the boxes and knew when he signed for them that Rose would come to get them.
As his first assignment of error defendant argues that the trial court erred in denying his motion to suppress the marijuana discovered in the boxes and the marijuana seized from the house.
Defendant contends the motion to suppress the packaged marijuana should have been granted because the affidavit in support of the search warrant failed to state facts sufficient to establish probable cause. He further argues that the affidavit contained false or misleading statements.
Specifically, defendant argues that the search warrant obtained by the DEA agents should not have been issued because it failed to set forth a basis which indicated that the agents had sufficient suspicion of the package to allow them to use the narcotics detection dogs. Defendant contends that but for the fact that the dogs indicated that the package contained contraband, the affidavit would not have set forth probable cause for the issuance of the warrant. In support of this argument, defendant relies on United States v. Beale, 674 F.2d 1327 (9th Cir.1982) which so held.
Defendant's reliance on Beale is misplaced. In United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) the U.S. Supreme Court held that subjecting an object to a detection dog search was not a "search" within the meaning of the Fourth Amendment. In reaching this holding, the Court stated:
The Fourth Amendment "protects people from unreasonable government intrusions into their legitimate expectations of privacy." United States v. Chadwick, 433 U.S. [1], at 7, 97 S.Ct. [2476], at 2481 [53 L.Ed.2d 538 (1977)]. We have affirmed that a person possesses a privacy interest in the contents of personal luggage that is protected by the Fourth Amendment. Id., at 13, 97 S.Ct. at 2484. A "canine sniff" by a well-trained narcotics detection dog, however, does not require *977 opening the luggage. It does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer's rummaging through the contents of the luggage. Thus, the manner in which information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited. This limited disclosure also ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods.
In these respects, the canine sniff is sui generis. We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure. Therefore, we conclude that the particular course of investigation that the agents intended to pursue hereexposure of respondent's luggage, which was located in a public place, to a trained caninedid not constitute a "search" within the meaning of the Fourth Amendment.

Id. 462 U.S. at 706-707, 103 S.Ct. at 2644-2645.
In Place, the defendant arrived at an airport in New York and was detained based upon facts which showed the officers had reasonable suspicion of him. The officers allowed the defendant to go, but they detained his luggage and sent it to another New York airport. While there, a detection dog "alerted" to the package. The Court found the seizure of this luggage and its transportation to the other airport for the inspection by the detection dog were supported by the officers' reasonable suspicion of the defendant. The Court further found, however, that the officers' subsequent action, keeping the luggage over the weekend before obtaining a warrant to search it, went beyond the scope of a "reasonable suspicion" stop.
In United States v. Jacobsen, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), the Supreme Court noted that its opinion in Place held that dog sniff searches did not violate the Fourth Amendment. It should also be noted that United States v. Beale, supra, was vacated by the Supreme Court and remanded to the Ninth Circuit for further consideration in light of its holding in Place. See United States v. Beale, 463 U.S. 1202, 103 S.Ct. 3529, 77 L.Ed.2d 1382 (1983). On remand, 736 F.2d 1289 (9th Cir.1984), cert. den. Beale v. United States, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984), the Ninth Circuit reversed its previous holding and found that the officers did not need articulable suspicion to use detection dogs.
This issue raised by defendant in the instant case was addressed by this court in State v. Philippoff, 588 So.2d 778 (La.App. 4th Cir.1991). In Philippoff, postal inspectors obtained a warrant to search a package addressed to Dave Hammond, in care of the defendant "Mischa" [Michael] Philippoff, at 638 Race Street in New Orleans. The return address on the package indicated it was sent from M & S Art Supply at 78 Clinton Street in New York, New York. The affidavit for the warrant indicated this package "fit the profile of an ongoing Inspection Service Express Mail Narcotics investigation, which includes fictitious return addresses." The affidavit stated that approximately an hour after learning that the package had been received at the Main Post Office, an investigating inspector had been advised by the post office in New York that the return address of M & S Art Supply, 7 Clinton Street, New York City, NY 10002 was fictitious. The package had been placed with several other packages, and two certified narcotics detection dogs had separately "alerted" on the package. The affidavit indicated that New York was a "source city for controlled substances."
Based upon this information, the officers obtained a search warrant, opened the package, and found it to contain approximately one pound of marijuana. Because *978 this amount was so small, the agents decided not to go any further with the federal investigation. However, they contacted N.O.P.D. and asked them if they wanted to pursue the matter. After conferring with N.O.P.D. officers, the inspectors taped the box and made a controlled delivery of the box to 638 Race Street.
Prior to this delivery, N.O.P.D. officers had obtained a warrant to search the residence. When the delivery was made, Philippoff answered the door and signed for the package. The officers waited approximately ten minutes and then executed the search warrant for the residence. The opened box was found inside the house, as were Philippoff and his codefendant Ava Somme, who at first told the officers she lived at that residence and then later denied she lived there.
Relying on Place and Jacobsen, this court found that the inspectors did not have to show articulable suspicion in order to use the narcotics dogs and rejected Philippoff's arguments. As such, the defendant's arguments in this case concerning the seizure of the marijuana contained in the boxes has no merit.
Defendant also contends that the warrant contained false or misleading statements. Particulary, he complains Anders stated in his affidavit that the box had an aroma associated with drugs. Defense counsel states that he and the district attorney inspected the boxes and were "unable to note any recognizable smell."
An affidavit is presumed to be valid; the defendant has the burden of showing by a preponderance of the evidence that the affidavit contains false statements. Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); State v. Brannon, 414 So.2d 335 (La.1982). Once the defendant has shown that the affidavit contains false statements, the burden shifts to the state to prove the veracity of the allegations in the affidavit. If the court finds that the affidavit contains misrepresentations, it must decide whether the misrepresentations were intentional. State v. Smith, 397 So.2d 1326 (La.1981); State v. Fairbanks, 467 So.2d 37 (La.App. 4th Cir.1985), writ den. 472 So.2d 916 (1985). If the court finds the misrepresentations were intentional, the search warrant must be quashed. If the court finds the misrepresentations were inadvertent or negligent, the inaccurate statements should be excised and the remaining statements tested for probable cause. State v. Lee, 524 So.2d 1176 (La.1987).
In the present case, defendant has not proven by a preponderance of the evidence that Anders made false or misleading representations when he stated that he detected an odor associated with drugs emanating from the box. The only evidence offered by the defendant is defense counsel's statement that he and the district attorney smelled the box at some undetermined time after the defendant was arrested and could not smell an odor. This argument is meritless.
Defendant also argues that the marijuana and rolling papers discovered in his house should have been suppressed because the defendant did not freely and voluntarily consent to the search. Defense counsel stated that the defendant would prove this issue at trial. At trial, the State introduced a consent to search form signed by the defendant. Detective Austin stated the defendant was advised of his rights before he signed the form and said that he wanted to consent to the search. No evidence was offered by the defense that the defendant did not freely and voluntarily consent to the search. This assignment is without merit.
As his second assignment of error, defendant argues that the State failed to present sufficient evidence to support the defendant's conviction for possession with intent to distribute marijuana.
In assessing the sufficiency of evidence to support a conviction, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 309, 99 S.Ct. 2781, 2784, 61 *979 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306, 310 (La.1982).
Here, the State presented evidence that the defendant left carrying two boxes containing 21.5 pounds of marijuana minutes after they were delivered. He placed them in the back of a pickup truck and began to drive away. There were no passengers in the truck. The State presented sufficient evidence to find that the defendant possessed marijuana.
Intent to distribute can be inferred from the circumstances. R.S. 15:445. An intention to distribute narcotics or other controlled dangerous substances can be inferred from the quantity in the accused's possession. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Pozo, 471 So.2d 308 (La.App. 4th Cir.1985); State v. Allen, 431 So.2d 808 (La.App. 4th Cir. 1983). In Pozo, supra, the defendant possessed 10 pounds of marijuana; in Trahan, supra, one and three quarter pounds; and in Allen, one pound. In all three cases the court held these amounts to be sufficient to prove an intent to distribute. In this case, the defendant possessed 21.5 pounds. Clearly, this evidence was sufficient to prove intent to distribute.
The defendant argues he did not know what was contained in the boxes. However, Detective Austin testified the defendant told him he knew what was in the boxes, but was only delivering to unknown men who paid him $300 for the delivery. Austin accompanied him to the supposed meeting place but no one met them. Although the police report does not mention that the defendant stated he knew the contents of the packages, Austin explained this omission as error. Determinations of the weight and credibility of conflicting evidence are within the province of the factfinder. State v. Rosiere, 488 So.2d 965 (La.1986). In addition, Marino testified one of the boxes could easily be smelled as containing marijuana.
The evidence was sufficient, viewing it in the light most favorable to the prosecution, for any rational trier of fact to have found the defendant guilty beyond a reasonable doubt. This assignment is meritless.
Accordingly, for the above reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.